# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 86-873-Cr-DAVIS(S)(S) |
| v. ) | |
| ) | 18 U.S.C. §1962(c) |
| LAWRENCE BERRIN, ) | 18 U.S.C. §1962(d) |
| DENNIS McGUIRE, ) | 18 U.S.C. §1952 |
| PAUL ACKLEY, ) | 21 U.S.C. §841(a)(1) |
| IAN KREBS, ) | 21 U.S.C. §846 |
| SHAUN M. LITTLE, ) | 21 U.S.C. §848 |
| RANDY LANIER, ) | 21 U.S.C. §952 |
| TERRY CASEY, ) | 21 U.S.C. §963 |
| SCOTT CASEY, ) | 18 U.S.C. §2 |
| TOMMY TEAGLE, and ) | |
| ROBERT STEPHENS, Sr., ) | |
| ) | |
| Defendants. ) | |

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### COUNT I

### The Enterprise

1.    From on or about March 1, 1979, to on or about January 1, 1987, the defendants,

> LAWRENCE BERRIN,
> DENNIS McGUIRE,
> PAUL ACKLEY,
> IAN KREBS,
> SHAUN M. LITTLE,
> RANDY LANIER,
> TERRY CASEY,
> SCOTT CASEY,
> TOMMY TEAGLE, and
> ROBERT STEPHENS, SR.,

together with coconspirators Michael I. Levine, Patrick
Bilton, Edward Curran, Michael O. Munday, Ted Pryor, Scott
Errico, Dennis Cason, and others known and unknown to the
grand jury, did constitute an enterprise within the meaning
of Title 18, United States Code, Section 1961(4), that is, a
group of individuals associated in fact which engaged in
various criminal activities consisting of multiple acts
involving the importation of a controlled substance to wit:
marijuana, a Schedule I controlled substance, in violation of
Title 21, United States Code, Sections 952 and 963;
possession with intent to distribute a controlled substance,
to wit: marijuana, a Schedule I controlled substance, in
violation of Title 21, United States Code, Section 841 and
846; and traveling in Foreign Commerce to promote an unlawful
activity,  in violation of Title 18, United States Code,
Section 1952 [said enterprise will hereinafter be referred to
as "the Enterprise"].

### The Racketeering Conspiracy

2.   From between on or about March 1, 1979, to on or
about January 1, 1987, within the Southern District of
Florida and elsewhere, the defendants LAWRENCE BERRIN,
DENNIS McGUIRE, PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE, RANDY
LANIER, TERRY CASEY, SCOTT CASEY, TOMMY TEAGLE, and ROBERT
STEPHENS, SR., together with coconspirators Michael I.

2

Levine, Patrick Bilton, Edward Curran, Michael O. Munday, Ted Pryor, Scott Errico and Dennis Cason and others known and unknown to the grand jury, being employed by and associated with "the Enterprise" as described in paragraph 1 above which was engaged in and the activities of which affected interestate and foreign commerce, did unlawfully, willfully, and knowingly conspire, combine, confederate and agree with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of "the Enterprise" through a pattern of racketeering activity, as defined by Title 18, United States Code, Sections 1961(1) and 1961(5) as set forth in paragraphs 5 and 6 of this count, in violation of Title 18, United States Code, Section 1962(c).

<u>Structure of the Enterprise</u>

3.   "The Enterprise" was structured in the following manner and the defendants and other persons associated with and employed by "the Enterprise" functioned in the following roles:

a)   The defendant, LAWRENCE BERRIN, was an attorney who concealed assets, "laundered money," and falsified documents and was associated with and participated in the affairs of "the Enterprise."

b)   The defendant, DENNIS McGUIRE was an organizer, supervisor, manager, and director of and participated in the affairs of "the Enterprise."

3

c) The defendant, PAUL ACKLEY was an organizer, supervisor, manager, and director of and participated in the affairs of "the Enterprise."

d) The defendant, SHAUN M. LITTLE was a part-owner of motor vessels employed by the "Enterprise" and otherwise was associated with and participated in the affairs of "the Enterprise."

e) The defendant, RANDY LANIER was a distributor of marijuana imported into the United States by "the Enterprise" and otherwise was associated with and participated in the affairs of "the Enterprise."

f) The defendant, IAN KREBS was a distributor of marijuana imported into the United States by "the Enterprise" and otherwise was associated with and participated in the affairs of "the Enterprise."

g) The defendants, TERRY CASEY, SCOTT CASEY, and TOMMY TEAGLE participated in the loading and off-loading of marijuana from vessels employed by "the Enterprise" and otherwise were associated with and participated in the affairs of "the Enterprise."

h) The defendant ROBERT STEPHENS, SR., was a boat captain/mate who piloted motor vessels employed by "the Enterprise" and otherwise participated in the affairs of "the Enterprise."

4

## The Purpose of the Enterprise

4.   It was the purpose of "the Enterprise" that:

a)   The defendants, DENNIS McGUIRE, PAUL ACKLEY, IAN KREBS and coconspirators Patrick Bilton, Edward Curran, Ted Pryor and Scott Errico would organize, promote, manage and supervise "the Enterprise" for the purpose of engendering large profits by importing marijuana into the United States and distributing the marijuana to customers in the United States.

b)   At the direction of the defendants, DENNIS McGUIRE, PAUL ACKLEY, and coconspirators Patrick Bilton, Edward Curran, Ted Pryor and Scott Errico, persons both known and unknown to the Grand Jury would captain various vessels to locations outside the United States, where those vessels would be loaded with marijuana, and thereafter the marijuana would be transported into the United States on behalf of "the Enterprise."

c)   The defendants DENNIS McGUIRE, PAUL ACKLEY, and coconspirators Patrick Bilton, Edward Curran, Ted Pryor and Scott Errico would finance the expenditures associated with the importation of marijuana as described above.  Those costs would include travel expenses for personnel and transportation expenses for transporting the marijuana.

5

d)      Under the supervision and direction of the defendants DENNIS McGUIRE, PAUL ACKLEY and coconspirators Patrick Bilton, Edward Curran, Ted Pryor and Scott Errico the marijuana imported into the United States by "the Enterprise" would be off-loaded and stored in the Southern District of Florida and elsewhere and sold in the Southern District of Florida and elsewhere.

e)      The defendants DENNIS McGUIRE, PAUL ACKLEY, and coconspirators Patrick Bilton, Edward Curran, Ted Pryor and Scott Errico and others known to the grand jury would, from time to time, review and compute both the quantities of marijuana imported into the United States and the expenses associated with that importation, and compute the profits from the importation and distribution of such marijuana.

f)      The defendants LAWRENCE BERRIN, DENNIS McGUIRE, PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE and coconspirators Michael I. Levine, Patrick Bilton, Edward Curran, Dennis Cason, and others known to the grand jury, would take all steps necessary to conceal, both the affairs of "the Enterprise" and the profits derived therefrom, such steps including the "laundering" of money, the creation of false and misleading documents, concealing the ownership of motor vessels used by "the Enterprise", and by aiding Scott Errico, a fugitive from justice, in avoiding apprehension and prosecution in the United States.

6

g)   Defendant LAWRENCE BERRIN and conspirator Michael I. Levine would also receive large sums of cash from coconspirator Michael O. Munday and his associates, the proceeds of cocaine smuggling activities, and launder these proceeds through corporations and bank accounts established in the Isle of Man, England, Panama, the British Virgin Islands and elsewhere.

h)   The defendants, TERRY CASEY, SCOTT CASEY, TOMMY TEAGLE, and others known to the grand jury, would assist in the off-loading of marijuana from various motor vessels after they arrived in the Southern District of Florida and elsewhere.

<div align="center">Acts of Racketeering</div>

5.   The pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and 1961(5) through which the defendants conducted and participated in the affairs of "the Enterprise" consisted of violations of Title 21, United States Code, Section 952, importation of quantities of marijuana; violations of Title 21, United States Code, Section 841(a)(1), possession with intent to distribute quantities of marijuana in excess of 1000 pounds; and violations of Title 18, United States Code, Section 1952, traveling in Foreign Commerce to promote an unlawful activity; as follows:

a)   Acts of Racketeering Indictable under Title 21,
United States Codes, Sections 952 and 841(a)(1).

a-1.  Marijuana Racketeering Act number one:  the
importation and possession with intent to distribute
marijuana aboard the tugboat "Brayton Point", as alleged in
Counts 11 and 12 of this Indictment, which are incorporated
by reference herein as if set out in full.

a-2.  Marijuana Racketeering Act number two:  the
attempted importation of marijuana aboard the M/V "Tonita",
as alleged in Count 13 of this Indictment, which is
incorporated by reference herein as if set out in full.

a-3.  Marijuana Racketeering Act number three:  the
importation and possession with intent to distribute
marijuana aboard the M/V "Tonita", as alleged in Counts 14
and 15 of this Indictment, which are incorporated by
reference herein as if set out in full.

a-4.  Marijuana Racketeering Act number four:  the
importation and possession with intent to distribute
marijuana aboard the M/V "Tonita" as alleged in Counts 16 and
17 of this Indictment, which are incorporated by reference
herein as if set out in full.

8

a-5.   Marijuana Racketeering Act number five:  the importation and possession with intent to distribute marijuana aboard the M/V "Dragon Bait" as alleged in Counts 18 and 19 of this Indictment, which are incorporated by reference herein as if set out in full.

a-6.   Marijuana Racketeering Act number six:  the importation and possession with intent to distribute marijuana aboard the M/V "Trivial Pursuit" as alleged in Counts 20 and 21 of this Indictment, which are incorporated by reference herein as if set out in full.

a-7.   Marijuana Racketeering Act number seven:  the importation and possession with intent to distribute marijuana aboard the M/V "Diversions" as alleged in Counts 22 and 23 of this Indictment, which are incorporated by reference herein as if set out in full.

a-8.   Marijuana Racketeering Act number eight:  the importation and possession with intent to distribute marijuana aboard the M/V "Lady Lee" as alleged in Counts 24 and 25 of this Indictment, which are incorporated by reference herein as if set out in full.

a-9.   Marijuana Racketeering Act number nine:  the importation and possession with intent to distribute marijuana aboard the M/V "Diversions" as alleged in Counts 26 and 27 of this Indictment, which are incorporated by reference herein as if set out in full.

9

a-10. Marijuana Racketeering Act number ten: the importation and possession with intent to distribute marijuana aboard the M/V "Diversions" as alleged in Counts 28 and 29 of this Indictment, which are incorporated by reference herein as if set out in full.

a-11. Marijuana Racketeering Act number eleven: the importation and possession with intent to distribute marijuana aboard the M/V "Nautilus" as alleged in Counts 30 and 31 of this Indictment, which are incorporated by reference herein as if set out in full.

a-12.  Marijuana Racketeering Act number twelve: the attempted importation of marijuana aboard the M/V "Nautilus" as alleged in Count 32 of this Indictment, which is incorporated by reference herein as if set out in full.

a-13.  Marijuana Racketeering Act number thirteen: the conspiracy to import and the conspiracy to possess with intent to distribute in excess of 1000 pounds of marijuana as alleged in Counts 4 and 5 of this Indictment, which are incorporated by reference herein as if set out in full.

b)   Acts of Racketeering Indictable under Title 18, United States Code, Section 1952.

b-1.  Travel Racketeering Act number one:  the Travel Act violation as alleged in Count 6 of this indictment, which is incorporated herein by reference as if set out in full.

10

b-2. Travel Racketeering Act number two:  the
Travel Act violation as alleged in Count 7 of this
indictment, which is incorporated herein by reference as if
set out in full.

b-3. Travel Racketeering Act number three:  the
Travel Act violation as alleged in Count 8 of this
indictment, which is incorporated herein by reference as if
set out in full.

b-4. Travel Racketeering Act number four:  the
Travel Act violation as alleged in Count 9 of this
indictment, which is incorporated herein by reference as if
set out in full.

b-5. Travel Racketeering Act number five:  the
Travel Act violation as alleged in Count 10 of this
indictment, which is incorporated herein by reference as if
set out in full.

### The Pattern of Racketeering Activity

6.   Each defendant conducted and participated in, and
agreed to conduct and participate in, the affairs of "the
Enterprise" through a pattern of racketeering activity as
follows:

a)   The defendant LAWRENCE BERRIN conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

11

a RACKETEERING ACT - as described in paragraph
5a-13 of this count.

and a RACKETEERING ACT - as described in
paragraph 5b-1 of this count.

and a RACKETEERING ACT - as described in
paragraph 5b-2 of this count.

and a RACKETEERING ACT - as described in
paragraph 5b-3 of this count.

and a RACKETEERING ACT - as described in
paragraph 5b-4 of this count.

and a RACKETEERING ACT - as described in
paragraph 5b-5 of this count.

b)   The defendant DENNIS McGUIRE conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph
5a-2 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-3 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-4 of this count.

12

and a RACKETEERING ACT - as described in
paragraph 5a-10 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-11 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-12 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-13 of this count.

c)    The defendant PAUL ACKLEY conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph
5a-1 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-13 of this count.

d)    The defendant IAN KREBS conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph
5a-1 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-13 of this count.

13

e)    The defendant SCOTT CASEY conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph
5a-3 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-4 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-5 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-6 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-13 of this count.


f)    The defendant TERRY CASEY conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph
5a-3 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-4 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-5 of this count.

and a RACKETEERING ACT - as described in
paragraph 5a-13 of this count.


14

g)    The defendant TOMMY TEAGLE conducted and participated in the affairs of the Enterprise, and agreed to do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph 5a-3 of this count.

and a RACKETEERING ACT - as described in paragraph 5a-4 of this count.

and a RACKETEERING ACT - as described in paragraph 5a-13 of this count.

h)    The defendant ROBERT STEPHENS, SR. conducted and participated in the affairs of the Enterprise, and agreed to do so, by committing the following acts of racketeering:

a RACKETEERING ACT - as described in paragraph 5a-3 of this count.

and a RACKETEERING ACT - as described in paragraph 5a-4 of this count.

and a RACKETEERING ACT - as described in paragraph 5a-5 of this count.

and a RACKETEERING ACT - as described in paragraph 5a-13 of this count.

15

i)     The defendant SHAUN M. LITTLE, conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

   a RACKETEERING ACT - as described in paragraph
    5a-7 of this count.

   and a RACKETEERING ACT - as described in
    paragraph 5a-8 of this count.

   and a RACKETEERING ACT - as described in
    paragraph 5a-9 of this count.

   and a RACKETEERING ACT - as described in
    paragraph 5a-13 of this count.


j)     The defendant RANDY LANIER, conducted and
participated in the affairs of the Enterprise, and agreed to
do so, by committing the following acts of racketeering:

   a RACKETEERING ACT - as described in paragraph
    5a-6 of this count.

   and a RACKETEERING ACT - as described in
    paragraph 5a-13 of this count.


<u>OVERT ACTS</u>

7.     In furtherance of said conspiracy and to effect the
objects thereof, in the Southern District of Florida and
elsewhere, one or more of the DEFENDANTS and their
coconspirators committed and caused to be committed at least
one of the following overt acts, among others:

16

(1)    On or about March 1979, PAUL ACKLEY met with Richard Bradford, Billy Wade and Ronald Rambo.

(2)    On or about April 1979, PAUL ACKLEY possessed two suitcases containing in excess of $500,000 in cash.

(3)    On or about April 23, 1979, LAWRENCE BERRIN, purchased cashier check #72079 at the First National Bank of South Miami in the amount of $274,000 with cash delivered to him by defendant PAUL ACKLEY.

(4)    On or about April 23, 1979, LAWRENCE BERRIN entered into a contract to purchase as "Trustee" property located at 22801 S.W. 192 Avenue, Miami, Florida on behalf of defendant IAN KREBS.

(5)    On or about June 9, 1979, LAWRENCE BERRIN purchased the property referred to in Overt Act 4 of this Indictment as "Trustee" for $162,500 to conceal the true owner of said property, IAN KREBS.

(6)    On or about October 16, 1979, LAWRENCE BERRIN leased a house at 14625 S.W. 63rd Court, Miami, Florida, on the behalf of PAUL ACKLEY.

(7)    On or about November 6, 1979, LAWRENCE BERRIN entered into a contract as "Trustee" to purchase 10 acres of real estate and a residence in Miami, Florida, for the behalf of PAUL ACKLEY.

17

(8)   On or about December 1979, PAUL ACKLEY and others known to the grand jury, imported in excess of 13,000 pounds of marijuana, into the District of South Carolina aboard the M/V "Serious".

(9)   On or about December 1979, Ronald Rambo assisted Richard Bradford in the counting of approximately 1.4 million dollars, which was partial payment to PAUL ACKLEY for the "Serious" load.

(10)  On or about January 31, 1980, LAWRENCE BERRIN entered into a contract to purchase as "Trustee" 10 acres of vacant land in Homestead, Florida, on the behalf of coconspirators and defendants, IAN KREBS and PAUL ACKLEY.

(11)  On or about March 21, 1980, LAWRENCE BERRIN purchased the property referred to in overt act #10 as "Trustee" for the amount of $280,000 to conceal the true owners of this property, defendants, IAN KREBS and PAUL ACKLEY.

(12)  On or about May 30, 1980, LAWRENCE BERRIN opened and created a bank account in the name of Lawrence S. Berrin, Special Account, to be utilized for paying expenses incurred by PAUL ACKLEY.

(13)  On or about June 17, 1980, LAWRENCE BERRIN incorporated Comfort Groves, Inc. a "shell" company.

18

(14)   On or about October 31, 1980, LAWRENCE BERRIN directed Michael Levine, to prepare a false financial statement for Comfort Gorves, Inc. for the purpose of procurring a loan to purchase an aircraft by defendant PAUL ACKLEY.

(15)   On or about November 14, 1980, LAWRENCE BERRIN and Michael Levine incorporated Executive Charter, Inc., listing LAWRENCE BERRIN as President to conceal the true owner of said corporation, defendant PAUL ACKLEY.

(16)   On or about January 22, 1981, LAWRENCE BERRIN, entered into an agreement as "Trustee" to purchase a 290 acre ranch in LaBelle, Florida, for defendant, PAUL ACKLEY.

(17)   On or about February 18, 1981, LAWRENCE BERRIN opened and created an account in the name of Executive Charter, Inc. at Sunset Commercial Bank to be utilized for paying expenses of PAUL ACKLEY.

(18)   On or about March 1981, LAWRENCE BERRIN and Michael Levine incorporated Princess Pat Inc., listing Michael Levine and Janet Batchlor as President and Secretary, respectively, to conceal the true owner of said corporation, the defendant PAUL ACKLEY.

(19) On or about September of 1981, Michael Levine and LAWRENCE BERRIN met with Patrick Diamond in the Isle of Man to discuss formation of offshore companies.

19

(20) On or about September of 1981, Levine and BERRIN purchased Tillworth Investments Ltd., an Isle of Man corporation, for the purpose of holding shares of Murphy Investments, Ltd., a BVI Company.

(21) On or about September 30, 1981, Michael Levine met with Shaun P. Murphy in Tortola, British Virgin Islands (BVI) and had Murphy form a "shell" company named Murphy Investments Ltd. for the purpose of holding real property.

(22) On October 5, 1981, Shaun Murphy incorporated Murphy Investments Ltd. in the BVI.

(23) On October 28, 1981, Murphy mailed certain documents to Patrick Diamond, including a Declaration of Trust and Indemnity acknowledging that Murphy owned Murphy Investments Ltd., on behalf of Tillworth Investments, Ltd.

(24) On November 11, 1981, Patrick Diamond wrote to Shaun Murphy, enclosing the executed Declaration of Trust and Indemnity.

(25) On or about December 9, 1981, LAWRENCE BERRIN, as trustee, acting for Michael O. Munday, executed a contract for the purchase of 1,324 acres of property in Martin County, Florida, for $1,721,967.00.

(26) On or about March 10, 1982, LAWRENCE BERRIN, as trustee, acting for Michael O. Munday, closed on the purchase of 1,324 acres in Martin County, Florida.

(27)   On or about April 13, 1982, LAWRENCE BERRIN, as trustee, Quit-Claimed the 1,324 acres in Martin County to Murphy Investments, Ltd., a company formed for the benefit of Michael O. Munday.

(28)   On or about November 10, 1982 Patrick Bilton and/or Edward Curran negotiated with and accepted a proposal from Vessel Marine Management for the construction of a hull for a 48' pleasure vessel for $80,000.00.

(29)   On or about November 20, 1982, Patrick Bilton and/or Edward Curran paid or caused to be paid the following amounts to Vessel Marine Management for the construction of the vessel Dragon Bait.

| | | |
|---|---|---|
| 1) | November 10, 1982 | $15,000.00 |
| 2) | December 16, 1982 | $ 5,000.00 |
| 3) | January 14, 1983 | $ 5,000.00 |
| 4) | February 18, 1983 | $10,000.00 |
| 5) | March 10, 1983 | $10,000.00 |
| 6) | April 13, 1983 | $10,000.00 |
| 7) | April 21, 1983 | $33,000.00 |
| 8) | May 26, 1983 | $10,000.00 |
| 9) | June 28, 1983 | $10,000.00 |
| 10) | September 2, 1983 | $ 6,000.00 |
| 11) | September 13, 1983 | $19,000.00 |
| 12) | September 20, 1983 | $ 3,000.00 |
| 13) | October 20, 1983 | $12,000.00 |

21

(30)  On or about May 1983, Patrick Bilton instructed Michael Levine to form an offshore corporation for him.

(31)  On or about May 27, 1983 Michael Levine directed Shaun P. Murphy to form a corporation, Bovell International Trading Ltd., in the British Virgin Islands and name himself as president, whose true owner was Patrick Bilton.

(32)  On or about May 1983, Michael Levine, Patrick Bilton and Byng Goode held discussions regarding Bilton's investment of approximately $500,000.00 cash in Midnight Express, Inc. and how to conceal his interest.

(33)  On or about May 27, 1983, Michael Levine, on Patrick Bilton's behalf, instructed Shaun Murphy to form Midnight Express, Ltd., a BVI Company, for the purpose of holding Bilton's interest in the Florida corporation, Midnight Express, Inc.

(34)  On or about May or June 1983, it was decided by Patrick Bilton and/or others, not to use a BVI Company to hold his shares of Midnight Express, Inc. and that Bilton would give Byng Goode $500,000 in cash for a one-third (1/3) interest in that company with the understanding that this would be an undisclosed investment.

22

(35)  On or about May 1983 Scott Errico deposited $750,000.00 in cash in safe deposit boxes located in the New York area.

(36)  On or about May or June 1983, Patrick Bilton arranged for Scott Errico to meet with Michael Levine to discuss placing his money offshore.  Shortly thereafter, Errico, Levine and Bilton had a meeting to discuss placing Errico's money in an Isle of Man company.

(37)  On June 6, 1983 Patrick Diamond formed an Isle of Man corporation named Castleward Investments, Ltd. for Scott Errico.

(38)  On June 3, 1983, Patrick Diamond arranged for the formation of Hemstead Investments, Ltd., a Liberian company, as nominee owner of Castleward Investments, Ltd. Shortly thereafter, Errico met with Levine to arrange for the delivery of Errico's money to England.

(39)  Shortly thereafter, Michael Levine telephoned Patrick Diamond in the Isle of Man to arrange for Diamond to meet an individual, whom he later knew as Scott Errico, in New York to explain the benefits of owning an Isle of Man company.

(40)  On or about July 4, 1983, Patrick Diamond opened U.S. Dollar Call Account #68815465 and Fixed Account #68820825 for Castleward Investments Ltd. at Midland Bank

23

Trust Corporation, Isle of Man. On or about the same date, Diamond informed the bank that he would be depositing approximately $250,000.00 into the Castleward account shortly.

(41) On or about July 4, 1983, Patrick Diamond flew to New York City on Michael Levine's instructions, lodged at the Helmsley Palace Hotel and telephoned Levine who told him to wait there and expect a call. Shortly thereafter, Diamond received a phone call from and met an individual who identified himself as Craig Jacobs but whose true identity was Scott Errico.

(42) Shortly thereafter, Errico and Diamond transported a briefcase containing $250,000.00 in cash from New York City to London and proceeded to deposit the money into Castleward Investments Ltd. Account #68815465.

(43) On or about the next day, Patrick Diamond and Scott Errico flew back to New York City where Errico picked up an additional $275,000.00 in cash. The next day Errico and Diamond flew back to London with the cash and proceeded to deposit it into Castleward Investments Ltd. Account #68815465.

(44) In or about May or June 1983, John Dennis Cason discussed the purchase of a house, located at 4013 Hancock Road, Ft. Lauderdale, with Michael Levine and how to conceal Cason's ownership of it.

24

(45)  In or about May of June 1983, John Dennis Cason instructed Michael Levine to form an offshore corporation for the purpose of buying and holding title to the Hancock Road house on his behalf.

(46)  In or about July 1983, John Dennis Cason gave Michael Levine approximately $131,895 in cash to cover the amount due at closing and the first year's mortgage payments, which Levine deposited to his trust account on fifteen different days, all in amount under $10,000.

(47)  On or about June 1983, Patrick Diamond formed Caridell Investments, Ltd., an Isle of Man Corporation, as instructed by Michael Levine.

(48)  On or about September 9, 1983, Patrick Bilton purchased a waterfront lot in Pine Channel Estates, Monroe County, Florida for $55,000.00 for the purpose of constructing a house thereon to use as an offload site for drug smuggling with Edward Curran and Thaddeus Pryor.

(49)  On or about September 9, 1983, Michael Levine directed Shaun Murphy to execute certain documents in order to title the lot in the name of Bovell International Trading Ltd.

(50)  On or about September 19, 1983, Patrick Diamond, acting on Michael Levine's instructions, travelled to Miami from the Isle of Man, and executed certain closing and mortgage documents to effect the purchase of the Hancock Road house by Caridell Investments, Ltd. for $280,261.

25

(51)  On or about September 20, 1983, Patrick Bilton instructed Michael Levine to form a Delaware corporation in the name of Dragon Bait for the purpose of holding title to a motor vessel.

(52)  In or about September, 1983, at Adobe Construction Co., Miami Lakes, Florida, DENNIS McGUIRE met with Patrick Bilton, Scott Errico and others known to the grand jury and discussed the importation of approximately 30,000 pounds of marijuana into the United States.

(53)  In or about October, 1983, DENNIS McGUIRE, Patrick Bilton and Dennis Cason met and discussed the importation of approximately 7,000 pounds of marijuana aboard the M/V "Tonita."

(54)  In or about October, 1983, in the Southern District of Florida TERRY CASEY, SCOTT CASEY, TOMMY TEAGLE and ROBERT STEVENS, SR., and others known to the grand jury off-loaded approximately 7,000 pounds of marijuana from the M/V "Tonita."

(55)  In or around mid to late 1983, Michael Levine, Patrick Bilton, DENNIS McGUIRE and McGuire's accountant, Bernard Doddo, held several meetings to discuss Bilton's investment in Crackers, Inc. and how to keep that investment undisclosed.

(56)   In or around mid to late 1983, Patrick Bilton gave DENNIS McGUIRE $225,000 - $250,000 in cash for a 10% interest in Crackers, Inc. with the understanding that this would be an undisclosed investment.

(57)   In or about November, 1983, defendant Patrick Bilton and others known to the grand jury traveled by airplane to Jamaica to discuss the importation of marijuana into the United States of America.

(58)   In or about November, 1983, Edward Curran together with others known to the grand jury imported approximately 1,800 pounds of marijuana into the Southern District of Florida aboard the M/V "Reel Action."

(59)   In or about December, 1983, DENNIS McGUIRE met with Patrick Bilton, Scott Errico and Ted Pryor and arranged for the importation of approximately 7,000 pounds of marijuana aboard the M/V "Tonita."

(60)   On or about January 22, 1984, in the Southern District of Florida TERRY CASEY, SCOTT CASEY, ROBERT STEVENS, SR. and TOMMY TEAGLE and others known to the grand jury, off-loaded approximately 7,000 pounds of marijuana from the M/V "Tonita."

(61)   In or about February, 1984, Patrick Bilton and Edward Curran met with Scott Errico and Ted Pryor and discussed the importation of approximately 5,000 pounds of marijuana into the United States of America aboard the M/V "Dragon Bait."

(62)   In or about May, 1984, at the direction of Patrick Bilton, SHAUN M. LITTLE transported a quantity of marijuana from Miami to a residence in Broward County, Florida.

(63)   On or about May 8, 1984, Michael Levine directed Shaun Murphy to prepare a fictitious lease on behalf of Dragon Bait, Inc. for the purpose of leasing the vessel to a fictitious individual.

(64)   On or about May 8, 1984, Shaun Murphy executed a six month lease for the M/V "Dragon Bait" with an individual named Robert Shore, a fictitious name, upon his presentation of a birth certificate bearing the same name.

(65)   On or about June 11, 1984 Patrick Bilton, using the alias Pat Thaddeus and Edward Curran, using the alias Gary Haney, contracted with Master Marine Construction, Inc. to construct a 63' motor vessel for Golden Moments, Inc.

(66) On or about the dates listed below, Patrick Bilton and Edward Curran paid or caused to be paid the following amounts to Master Marine Construction, Inc. on behalf of Golden Moments, Inc.

| | |
|---|---|
| 6-7-84 | $10,000.00 |
| 6-13-84 | $12,000.00 |
| 8-10-84 | $25,000.00 |
| 8-22-84 | $25,000.00 |
| 9-4-84 | $86,000.00 |
| 9-12-84 | $ 4,000.00 |
| 12-27-84 | $25,000.00 |
| 4-19-85 | $ 9,410.00 |

(67) In or about August, 1984, Patrick Bilton, Eddie Curran and SHAUN M. LITTLE discussed the importation of a quantity of marijuana on board the M/V "Diversions."

(68) In or about August, 1984, RANDY LANIER telephonically conferred with coconspirator Ted Pryor.

(69) In or about August 1984, RANDY LANIER purchased a quantity of marijuana from coconspirator Ted Pryor.

(70) On or about August, 1984, Patrick Bilton and coconspirator Scott Errico delivered approximately $600,000 in cash to Michael I. Levine for transfer to the Isle of Man, England.

(71)   On or about November of 1984, Patrick Bilton, Edward Curran and Scott Errico changed the name of the 48' vessel Dragon Bait to Trivial Pursuit.

(72)   On or about November 12, 1984, SCOTT CASEY, acting as agent for Patrick Bilton, travelled to the British Virgin Islands for the purpose of leasing the motor vessel Trivial Pursuit under the false name of Alan E. Benz.

(73)   On or about November 12, 1984, Shaun Murphy executed a lease for the motor vessel Trivial Pursuit with an individual identifying himself as Alan E. Benz, whose true identity is SCOTT CASEY, with Benz making a $24,000.00 payment.

(74)   On or about November 16, 1984 Michael Levine directed Carol M. Berndt and Associates to incorporate Trivial Pursuit, Inc. in the State of Delaware for the purpose of purchasing and holding ownership in a 48' vessel named Dragon Bait.

(75)   On or about November 1984, Patrick Bilton instructed Michael Levine to form a Delaware corporation in the name of Nautilus Dive Club for the purpose of holding title in a motor vessel.

(76)   On or about November 16, 1984, Michael Levine directed Carol M. Berndt and Associates to incorporate Nautilus Dive Club, Inc. in the State of Delaware for the purpose of holding title to a 43' Torres motor vessel named Nautilus.

30

(77)  On or about November 20, 1984, Patrick Bilton purchased a 43' Torres motor vessel from Mike Sorrentino for an undisclosed amount.

(78)  On or about November 20, 1984, Patrick Bilton had the 43' Torres motor vessel titled in the name of Nautilus Dive Club, Inc.

(79)  On or about November 21, 1984, Michael Levine, in his capacity as Corporate Secretary of Dragon Bait, Inc., executed a Bill of Sale selling the vessel named Dragon Bait to Trivial Pursuit, Inc.

(80)  On or about November of 1984, Michael Levine contacted Shaun Murphy and informed him that Ramsey Trading Company, BVI owned the share of Trivial Pursuit, Inc.

(81)  On or about December 12, 1984, SCOTT CASEY, acting as agent for Patrick Bilton travelled to the British Virgin Islands with a fictitious birth certificate for the purpose of leasing the motor vessel Nautilus under the false name of Paul Meyers.

(82)  On or about December 12, 1984, Shaun Murphy executed a lease for the motor vessel Nautilus with an individual identifying himself as Paul Meyers, whose true identity is SCOTT CASEY, with Meyers making a $12,000.00 payment.

31

(83)  On or about December 27, 1984, Patrick Bilton and Edward Curran, using the aliases Pat Thaddeus and Gary Haney, contracted with Master Marine Construction, Inc. to construct a 63' motor vessel for Golden Times, Inc.

(84)  On or about the dates listed below, Patrick Bilton and Edward Curran paid or caused to be paid the following amounts to Master Marine Construction, Inc. on behalf of Golden Times, Inc.

| | |
|---|---|
| 12-27-84 | $ 5,000.00 |
| 2-26-85 | $14,000.00 |
| 2-28-85 | $ 8,000.00 |
| 6-12-85 | $ 8,153.00 |
| 1-24-86 | $13,000.00 |

(85)  On or about March 1985, Patrick Bilton instructed Michael Levine to form a Delaware corporation for the purpose of holding title in a motor vessel.

(86)  On or about March 5, 1985, Michael Levine caused to be formed a Delaware corporation in the name of Golden Times, Inc.

32

(87)  On or about the dates listed below, Michael I. Levine instructed Shaun Murphy to make the following wire transfers to Master Marine Construction, Inc. on behalf of Golden Times, Inc.

| | |
|---|---|
| 4-22-85 | $17,980.00 |
| 6-5-85 | $70,000.00 |
| 6-5-85 | $90,492.95 |
| 8-13-85 | $29,900.00 |

(88)  On or about March 25, 1985, Michael I. Levine instructed Rosalyn Sanders, his secretary, to mail a Quit Claim Deed to Shaun Murphy for his signature transferring the townhouse from the Pryor's back to Bovell International Trading Ltd.

(89)  On or about April 1, 1985, Patrick Bilton sold the Miramar Townhouse back to Thaddeus and Tonita Pryor.

(90)  On or about April 1, 1985, Michael Levine directed Shaun Murphy to execute certain documents in order to Quit Claim the townhouse from Bovell International Trading Ltd. to Thaddeus and Tonita Pryor.

(91)  On or about May 9, 1985, Patrick Bilton directed Michael Levine to contact Shaun Murphy and have Murphy wire transfer $100,000 to ABC Auto Sales, Inc. in Miami from funds which Bilton had on deposit with Murphy in the BVI.

33

(92)  On or about May 9, 1985, Shaun Murphy transferred $100,000 to ABC Auto Sales, Inc. using the fictitious name John Roberts as remitter.

(93)  On or about May 28, 1985, SCOTT CASEY, acting as agent for Patrick Bilton, travelled to the British Birgin Islands with a false New York Driver's License for the purpose of leasing the motor vessel First Strike under the name of John Carr.

(94)  On or about May 28, 1985, Shaun Murphy executed a 6 month lease for the motor vessel First Strike with an individual identifying himself as John Carr, whose true identity is SCOTT CASEY, with Carr making a $20,000.00 payment.

(95)  In or about April 1986, DENNIS McGUIRE met with Patrick Bilton and arranged for McGuire's "people" to off-load approximately 7000 pounds of marijuana from the M/V "Diversions" onto smaller vessels for transport into the Southern District of Florida.

(96)  In or about August 1986, DENNIS McGUIRE met with Patrick Bilton and arranged for McGuire's "people" to off-load approximately 4000 pounds of marijuana from the M/V "Nautilus" onto smaller vessels for transport into the Southern District of Florida.

All of the above in violation of Title 18, United States Code, Section 1962(d).

34

## FORFEITURE

1.    Through the aforesaid pattern of racketeering
activity, the defendants LAWRENCE BERRIN, DENNIS McGUIRE,
PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE, RANDY LANIER, TERRY
CASEY, SCOTT CASEY, TOMMY TEAGLE, and ROBERT STEPHENS, SR.,
have interests which they acquired and maintained in
violation of Section 1962, and interests in, security of,
claim against, and property and contractual right of any kind
affording a source of influence over corporations, companies,
real estate, vehicles, boats, and other property, through
which they acquired, established, operated, controlled,
conducted, and participated, directly and indirectly, in the
conduct of "the Enterprise" through a pattern of racketeering
activity in violation of Title 18, United States Code,
Section 1962, thereby making the above-mentioned interests
subject to forfeiture to the United States pursuant to Title
18, United States Code, Section 1963(a)(1) and (2).

2.    The defendants LAWRENCE BERRIN, DENNIS McGUIRE,
PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE, RANDY LANIER, TERRY
CASEY, SCOTT CASEY, TOMMY TEAGLE, and ROBERT STEPHENS, SR.,
have property constituting and derived from proceeds which
they obtained, directly or indirectly, from racketeering
activity in violation of Title 18, United States Code,

35

Section 1962, thereby making the above-mentioned interests subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3.   The interests of the defendants subject to forfeiture to the United States include any interest acquired and maintained, and any interests in, security of, claim against, and property and contractual right of any kind affording a source of influence over "the Enterprise" and any property constituting and derived from any proceeds which they obtained, directly or indirectly, from racketeering activity.

The forfeitable property includes, but is not limited to the following:

### VESSELS

1.   One motor vessel Ship Shape, a/k/a First Strike Inc., a/k/a Real Estate registration number DL0216B, 1984, 48', hull I.D. number MMG481020983.

2.   One motor vessel Dragon Bait, a/k/a Trivial Pursuit, a/k/a Family Affair registration number DL6621L, 1983, 48', hull I.D. number MMG480940782.

3.   One motor vessel Golden Times, Inc., a/k/a Golden Moments, Inc., 57', hull I.D. number MMZ63127B185.

4.   One motor vessel Golden Times, Inc., a/k/a Golden Moments, Inc., registration number DL0971B, 63', hull I.D. number MMZ63123F184.

36

5.    One 1982 Midnight Express motor vessel 37',
registration number FL2975EM, hull I.D. number
MXJ-37-020M82K.

6.    One 1985 Midnight Express motor vessel 37',
registration number DL0J04B, hull I.D. number MXJ37049C585,
registered to Eland Inc.

7.    One 1982 Seavee (Midnight Express) motor vessel
25', registration number FL3595EK, hull I.D. number
MX3-37-010-M82D.

8.    One 1983 Torres Nautilus, a/k/a Dixie Diver motor
vessel 43', hull I.D. number TBP000800683.

9.    One 48' sport fisherman motor vessel known as the
Diversions.

## PROPERTIES

The following properties owned by <u>Dennis McGuire</u>:

1.    Property and residence located at 7300 North
      Oakmont Drive, Miami, Florida.

      The real estate property is more particularly
      described as:

      Lot 10 and Lot 11, Block 24, Country Club of Miami
      Estates, Section Four, according to the Plat
      thereof, as recorded in Plat Book 78, at Page 46 of
      the Public Records of Dade County, Florida.

2.    Property and residence located at 7270 North
      Oakmont Drive, Miami, Florida.  The real estate
      property is more particularly described as:

      Lot 12, Block 24, Country Club of Miami Estates,
      Section Four, according to the Plat thereof, as
      recorded in Plat Book 78, at Page 46, of the Public
      Records of Dade County, Florida.

37

The following properties owned by <u>Lawrence S. Berrin</u> and <u>Sheryl Berrin</u>:

> Residence located at 11801 S/W 69 Avenue, Miami, Florida, 33156.
>
> The real property is more particularly described as:
>
> Lot 6 in Block 5, of Oakridge Estates Section Two, according to the Plat thereof, as recorded in Plat Book 57 at Page 1 of the Public Records of Dade County, Florida.

The following properties owned by <u>Ian Krebs</u>:

> Property and residence located at 22801 S.W. 190 Avenue, Miami, Florida.
>
> The real estate property is more particularily described as:
>
> The N½ of the N½ of the W½ of the E½ of the SW¼ of the SE¼ in Section 14, Township 56 South, Range 38 East, and the West 25' of the S3/4 of the W½ of the E½ of the SW¼ of the SE¼ for the purpose of ingress and egress, lying and being in Dade County, Florida.

The following properties owned by <u>Ian Krebs</u> and <u>Paul G. Ackley</u>:

> 15 acres of agricultural land located in Dade County, Florida.  The real estate property is more particularly described as:

38

All the part of the South 3/4 of the East ½ of the
W½ of the NW¼ of the SE ¼ and the South 3/4 of the
West ½ of the East ½ of the NW¼ of the SE¼ of
Section 14, Township 56 South, Range 38 East, in
Dade County, Florida.

## CASH PROCEEDS

1.  Approximately $800,000 ± on deposit in the Bank of
    Ireland, London, England, in accounts in the name
    of C.C. & M. Incorporated and G. Reedy Holding
    Company, controlled by Patrick B.A. Diamond at the
    direction of Michael I. Levine on behalf of Michael
    O. Munday and Patrick Bilton.

2.  Approximately $200,000 ± on deposit in various
    offshore accounts managed and controlled by Shaun
    Murphy, at the direction of Michael I. Levine on
    behalf of Michael O. Munday and Patrick Bilton.

All of the above in violation of Title 18, United States
Code, Sections 1962(d) and 1963.

39

## COUNT II

### The Enterprise

1.   Each and every allegation contained in paragraphs
1, 3, and 4 of Count I of this Indictment is incorporated in
this Count II by reference as if fully set forth herein.

### Racketeering

2.   From on or about March 1, 1979 to on or about
January 1, 1987, within the Southern District of Florida, and
elsewhere, the defendants,

> LAWRENCE BERRIN,
> DENNIS McGUIRE,
> PAUL ACKLEY,
> IAN KREBS,
> SHAUN M. LITTLE,
> RANDY LANIER,
> TERRY CASEY,
> SCOTT CASEY,
> TOMMY TEAGLE, and
> ROBERT STEPHENS, SR.,

together with coconspirators Michael I. Levine, Patrick
Bilton, Edward Curran, Michael O. Munday , Scott Errico, Ted
Pryor, Dennis Cason and other persons, known and unknown to
the Grand Jury, being employed by and associated with "the
Enterprise", as defined in Title 18, United States Code,
Section 1961(4) and described in paragraphs 1, 3, and 4 of
Count I of this Indictment, did unlawfully, willfully and

40

knowingly conduct and participate, directly and indirectly, in the affairs of "the Enterprise", which was engaged in and the activities of which affected interstate and foreign commerce through a pattern of racketeering activity.

<u>The Pattern of Racketeering Activity</u>

3.    The pattern of Racketeering Activity, as defined by Title 18, United States Code, Section 1961(1) through which the defendants conducted and participated in the affairs of the enterprise consisted of multiple acts involving; the importation of a controlled substance to wit:  marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 952 and 963; possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 841 and 846; and traveling in foreign commerce to promote an unlawful activity, in violation of Title 18, United States Code, Section 1952; the acts constituting said pattern of racketeering activity, being those acts described in paragraph 5 and paragraph 6 of Count I of this Indictment, the allegations of which are incorporated in this Count II by reference, as if fully set forth herein.

## FORFEITURE

1.    Through the aforesaid pattern of racketeering
activity, the defendants LAWRENCE BERRIN, DENNIS McGUIRE,
PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE, RANDY LANIER, TERRY
CASEY, SCOTT CASEY, TOMMY TEAGLE, and ROBERT STEPHENS, SR.,
have interests which they acquired and maintained in
violation of Section 1962, and interests in, security of,
claim against, and property and contractual right of any kind
affording a source of influence over corporations, companies,
real estate, vehicles, boats, and other property, through
which they acquired, established, operated, controlled,
conducted, and participated, directly and indirectly, in the
conduct of "the Enterprise" through a pattern of racketeering
activity in violation of Title 18, United States Code,
Section 1962, thereby making the above-mentioned interests
subject to forfeiture to the United States pursuant to Title
18, United States Code, Section 1963(a)(1) and (2).

2.    The defendants LAWRENCE BERRIN, DENNIS McGUIRE,
PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE, RANDY LANIER, TERRY
CASEY, SCOTT CASEY, TOMMY TEAGLE, and ROBERT STEPHENS, SR.,
have property constituting and derived from proceeds which
they obtained, directly or indirectly, from racketeering
activity in violation of Title 18, United States Code,

42

Section 1962, thereby making the above-mentioned interests subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3. The interests of the defendants subject to forfeiture to the United States include any interest acquired and maintained, and any interests in, security of, claim against, and property and contractual right of any kind affording a source of influence over "the Enterprise" and any property constituting and derived from any proceeds which they obtained, directly or indirectly, from racketeering activity.

The forfeitable property includes, but is not limited to the following:

## VESSELS

1. One motor vessel Ship Shape, a/k/a First Strike Inc., a/k/a Real Estate registration number DL0216B, 1984, 48', hull I.D. number MMG481020983.

2. One motor vessel Dragon Bait, a/k/a Trivial Pursuit, a/k/a Family Affair registration number DL6621L, 1983, 48', hull I.D. number MMG480940782.

3. One motor vessel Golden Times, Inc., a/k/a Golden Moments, Inc., 57', hull I.D. number MMZ63127B185.

4. One motor vessel Golden Times, Inc., a/k/a Golden Moments, Inc., registration number DL0971B, 63', hull I.D. number MMZ63123F184.

43

5.    One 1982 Midnight Express motor vessel 37',
registration number FL2975EM, hull I.D. number
MXJ-37-020M82K.

6.    One 1985 Midnight Express motor vessel 37',
registration number DL0J04B, hull I.D. number MXJ37049C585,
registered to Eland Inc.

7.    One 1982 Seavee (Midnight Express) motor vessel
25', registration number FL3595EK, hull I.D. number
MX3-37-010-M82D.

8.    One 1983 Torres Nautilus, a/k/a Dixie Diver motor
vessel 43', hull I.D. number TBP000800683.

9.    One 48' sport fisherman motor vessel known as the
Diversions.

### PROPERTIES

The following properties owned by Dennis McGuire:

1.    Property and residence located at 7300 North

       Oakmont Drive, Miami, Florida.

       The real estate property is more particularly

       described as:

       Lot 10 and Lot 11, Block 24, Country Club of Miami
       Estates, Section Four, according to the Plat
       thereof, as recorded in Plat Book 78, at Page 46 of
       the Public Records of Dade County, Florida.

2.    Property and residence located at 7270 North

       Oakmont Drive, Miami, Florida.  The real estate

       property is more particularly described as:

       Lot 12, Block 24, Country Club of Miami Estates,
       Section Four, according to the Plat thereof, as
       recorded in Plat Book 78, at Page 46, of the Public
       Records of Dade County, Florida.

44

The following properties owned by <u>Lawrence S. Berrin</u> and
<u>Sheryl Berrin</u>:

> Residence located at 11801 S/W 69 Avenue, Miami,
> Florida, 33156.
>
> The real property is more particularly described
> as:
>
> Lot 6 in Block 5, of Oakridge Estates Section Two,
> according to the Plat thereof, as recorded in Plat
> Book 57 at Page 1 of the Public Records of Dade
> County, Florida.

The following properties owned by <u>Ian Krebs</u>:

> Property and residence located at 22801 S.W. 190
> Avenue, Miami, Florida.
>
> The real estate property is more particularily
> described as:
>
> The N½ of the N½ of the W½ of the E½ of the SW¼ of
> the SE¼ in Section 14, Township 56 South, Range 38
> East, and the West 25' of the S3/4 of the W½ of the
> E½ of the SW¼ of the SE¼ for the purpose of ingress
> and egress, lying and being in Dade County,
> Florida.

The following properties owned by <u>Ian Krebs</u> and
<u>Paul G. Ackley</u>:

> 15 acres of agricultural land located in Dade
> County, Florida.  The real estate property is more
> particularly described as:

All the part of the South 3/4 of the East ½ of the
W½ of the NW¼ of the SE ¼ and the South 3/4 of the
West ½ of the East ½ of the NW¼ of the SE¼ of
Section 14, Township 56 South, Range 38 East, in
Dade County, Florida.

### CASH PROCEEDS

1.  Approximately $800,000 ± on deposit in the Bank of
    Ireland, London, England, in accounts in the name
    of C.C. & M. Incorporated and G. Reedy Holding
    Company, controlled by Patrick B.A. Diamond at the
    direction of Michael I. Levine on behalf of Michael
    O. Munday and Patrick Bilton.

2.  Approximately $200,000 ± on deposit in various
    offshore accounts managed and controlled by Shaun
    Murphy, at the direction of Michael I. Levine on
    behalf of Michael O. Munday and Patrick Bilton.

All of the above in violation of Title 18, United States
Code, Sections 1962(c) and 1963.

46

## COUNT III

From on or about September 1, 1981, to on or about January 1, 1987, within the Southern District of Florida, and elsewhere, the defendant,

DENNIS McGUIRE,

did knowingly and intentionally engage in a continuing criminal enterprise, in that he did knowingly and intentionally violate Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a)(1) and 963, as alleged in Counts 4, 5, 13, 14, 15, 16, 17, 28, 29, 30, 31 and 32 of this indictment, which counts are incorporated herein by reference, which violations were part of a continuing series of violations of subchapters I and II of the Drug Abuse and Control Act of 1970 undertaken by the defendant, DENNIS McGUIRE, in concert with at least five other persons with respect to whom the defendant, DENNIS McGUIRE, occupied a position of organizer, supervisor, and manager, and from which continuing series of violations the defendant, DENNIS McGUIRE, did obtain substantial income and resources.

## FORFEITURE

Upon the conviction of defendant DENNIS McGUIRE of engaging in a continuing criminal enterprise as set forth in this Count 3, in violation of Title 21, United States Code, Section 848, the United States is entitled to forfeiture of, and the defendant DENNIS McGUIRE will forfeit to the United States, all profits and proceeds of profits obtained by him in such enterprise, and shall forfeit his interest in and claim against, any and all property and contractural rights of any kind affording a source of influence over such enterprise including but not limited to the following described property, profits, and proceeds of profits, interest, claims, and contractural rights of defendant DENNIS McGUIRE wherever the same may be situated, and however owned, whether directly or indirectly, said interests are fully set forth in the forfeiture paragraphs of Count 1 of this Indictment and are realleged and expressly incorporated herein by reference as if set forth in full.

All of the above in violation of Title 21, United States Code, Section 848.

## COUNT IV

From in or about March 1, 1979, until on or about January 1, 1987, in the Southern District of Florida and elsewhere, the defendants,

> LAWRENCE BERRIN,
> DENNIS McGUIRE,
> PAUL ACKLEY,
> IAN KREBS,
> SHAUN M. LITTLE,
> RANDY LANIER,
> TERRY CASEY,
> SCOTT CASEY,
> TOMMY TEAGLE, and
> ROBERT STEPHENS, SR.,

did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to violate Title 21, United States Code, Sections 952(a) and 960(a)(1).

It was the purpose and object of this conspiracy to knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 963.

49

## COUNT V

From in or about March 1, 1979, until on or about January 1, 1987, in the Southern District of Florida and elsewhere, the defendants,

                    LAWRENCE BERRIN,
                    DENNIS McGUIRE,
                    PAUL ACKLEY,
                    IAN KREBS,
                    SHAUN M. LITTLE,
                    RANDY LANIER,
                    TERRY CASEY,
                    SCOTT CASEY,
                    TOMMY TEAGLE, and
                    ROBERT STEPHENS, SR.,

did knowingly and intentionally combine, conspire, and confederate and agree with each other and with other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to violate Title 21, United States Code, Section 841(a)(1).

It was the purpose and object of this conspiracy to knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1,000 pounds of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 846.

## COUNT VI

In or about April 30, 1982, in the Southern District of Florida and elsewhere, the defendant,

### LAWRENCE BERRIN

and Michael I. Levine did cause another to travel in foreign commerce and did cause another to use facilities in foreign commerce from Miami, in the Southern District of Florida, to Tortola in the British Virgin Islands, with intent to distribute the proceeds of an unlawful activity, that is, a business enterprise involving controlled substances transactions in violation of Title 21, United States Code, and thereafter did perform, attempt to perform and cause to be performed acts to distribute the proceeds of a business enterprise involving controlled substances, in violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT VII

In or about October, 1982, in the Southern District of Florida and elsewhere, the defendant,

### LAWRENCE BERRIN

and Michael I. Levine did cause another to travel in foreign commerce and did cause another to use facilities in foreign commerce from Miami, and elsewhere in the Southern District of Florida, to Tortola in the British Virgin Islands, with intent to distribute the proceeds of an unlawful activity, that is, a business enterprise involving controlled substances transactions in violation of Title 21, United States Code, and thereafter did perform, attempt to perform and cause to be performed acts to distribute the proceeds of a business enterprise involving controlled substances, in violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT VIII

In or about May, 1983, in the Southern District of Florida and elsewhere, the defendant,

### LAWRENCE BERRIN

and Michael I. Levine did travel and cause others to travel in foreign commerce and did use facilities and cause others to use facilities in foreign commerce from Miami, in the Southern District of Florida, to the Isle of Mann, England, with intent to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving controlled substances transactions in violation of Title 21, United States Code, and thereafter did perform, attempt to perform and cause to be performed acts to facilitate the promotion, management, establishment and carrying on of a business enterprise involving controlled substances, in violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT IX

In or about July 27, 1983, in the Southern District of Florida and elsewhere, the defendant,

### LAWRENCE BERRIN

and Michael I. Levine did travel and cause others to travel in foreign commerce and did use facilities and cause others to use facilities in foreign commerce from Miami, in the Southern District of Florida, to Panama, with intent to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving controlled substances transactions in violation of Title 21, United States Code, and thereafter did perform, attempt to perform and cause to be performed acts to facilitate the promotion, management, establishment and carrying on of a business enterprise involving controlled substances, in violation of Title 18, United States Code, Sections 1952 and 2.

54

## COUNT X

On or about January 17, 1985, in the Southern District of Florida and elsewhere, the defendant,

### LAWRENCE BERRIN

and Michael I. Levine did travel and cause others to travel in foreign commerce and did use facilities and cause others to use facilities in foreign commerce from Miami, in the Southern District of Florida, to the Isle of Man, England, with intent to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving controlled substances transactions in violation of Title 21, United States Code, and thereafter did perform, attempt to perform and cause to be performed acts to facilitate the promotion, management, establishment and carrying on of a business enterprise involving controlled substances, in violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT XI

In or about April 1, 1983, on board the M/V "Brayton Point", in the Southern District of Florida, and elsewhere, the defendants,

**PAUL ACKLEY and
IAN KREBS,**

and Ted Pryor and Scott Errico and others known and unknown to the grand jury did knowingly and intentionally import into the United States from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952, and 963 and Title 18, United States Code, Section 2.

56

## COUNT XII

In or about April 1, 1983, on board the M/V "Brayton Point", in the Southern District of Florida, and elsewhere, the defendants,

PAUL ACKLEY and
IAN KREBS,

and Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT XIII

On or about September, 1983, on board the M/V "Tonita", in the Southern District of Florida, and elsewhere, the defendant,

### DENNIS McGUIRE

and Patrick Bilton, Edward Curran, Ted Pryor and Scott Errico and others known and unknown to the grand jury did knowingly and intentionally attempt to unlawfully import into the United States from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952, and 963 and Title 18, United States Code, Section 2.

## COUNT XIV

In or about October, 1983, in Dade County, in the Southern District of Florida, the defendants,

> DENNIS McGUIRE,
> TERRY CASEY,
> SCOTT CASEY,
> ROBERT STEPHENS, SR., and
> TOMMY TEAGLE,

and Patrick Bilton, Scott Errico, Ted Pryor, and Dennis Cason and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

59

<u>COUNT XV</u>

In or about October, 1983, in Miami, in the Southern
District of Florida, the defendants,

> DENNIS McGUIRE,
> TERRY CASEY,
> SCOTT CASEY,
> ROBERT STEPHENS, SR., and
> TOMMY TEAGLE,

and Patrick Bilton, Scott Errico, Ted Pryor, and Dennis
Cason, and others known and unknown to the grand jury did
knowingly and intentionally possess with intent to distribute
a controlled substance, that is, in excess of 1000 pounds of
marijuana, a Schedule I controlled substance; in violation of
Title 21, United States Code, Section 841(a)(1) and Title 18,
United States Code, Section 2.

## COUNT XVI

In or about January 22, 1984, in Dade County, in the Southern District of Florida, the defendants,

> DENNIS McGUIRE,
> TERRY CASEY,
> SCOTT CASEY,
> ROBERT STEPHENS, SR., and
> TOMMY TEAGLE,

and Patrick Bilton, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

61

## COUNT XVII

In or about January 22, 1984, in Dade County, in the Southern District of Florida, the defendants,

> DENNIS McGUIRE,
> TERRY CASEY,
> SCOTT CASEY,
> ROBERT STEPHENS, SR., and
> TOMMY TEAGLE,

and Patrick Bilton, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT XVIII

In or about February, 1984, in Palm Beach County, in the Southern District of Florida, the defendants,

TERRY CASEY,
SCOTT CASEY, and
ROBERT STEPHENS, SR.,

and Patrick Bilton, Edward Curran, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

63

## COUNT XIX

In or about February, 1984, in Palm Beach County, in the Southern District of Florida, the defendants,

TERRY CASEY,
SCOTT CASEY, and
ROBERT STEPHENS, SR.,

and Patrick Bilton, Edward Curran, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

64

## COUNT XX

In or about August, 1984, in Broward County, in the Southern District of Florida, the defendants,

RANDY LANIER, and
SCOTT CASEY,

and Patrick Bilton, Edward Curran, Scott Errico and Ted Pryor and others known and unknown to the grand did knowingly and intentionally import into the United States, from a place outside thereof, on board the M/V "Trivial Pursuit" a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

65

## COUNT XXI

In or about August, 1984, in Broward County, in the Southern District of Florida, the defendants,

RANDY LANIER, and
SCOTT CASEY,

and Patrick Bilton, Edward Curran, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance, which was imported on the M/V "Trivial Pursuit"; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

66

## COUNT XXII

In or about August, 1984, in the Southern District of Florida, the defendant,

### SHAUN M. LITTLE,

and Patrick Bilton, Edward Curran, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, on board the M/V "Diversions" a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

67

## COUNT XXIII

In or about August, 1984, in the Southern District of Florida, the defendant,

### SHAUN M. LITTLE,

and Patrick Bilton, Edward Curran and others known to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance, which was imported on the M/V "Diversions"; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

68

## COUNT XXIV

In or about May/June, 1985, in the Southern District of Florida, the defendant,

### SHAUN M. LITTLE,

and Patrick Bilton and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, on board the M/V "Lady Lee" a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

## COUNT XXV

In or about May/June, 1985, in the Southern District of Florida, the defendant,

SHAUN M. LITTLE,

and Patrick Bilton and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance, which was imported on the M/V "Lady Lee"; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

70

## COUNT XXVI

In or about May/June, 1985, in the Southern District of Florida, the defendant,

### SHAUN M. LITTLE,

and Patrick Bilton, Edward Curran, Scott Errico and Ted Pryor and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, on board the M/V "Diversions" a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

71

## COUNT XXVII

In or about May/June, 1985, in the Southern District of Florida, the defendant,

### SHAUN M. LITTLE,

and Patrick Bilton, Edward Curran and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance, which was imported on the M/V "Diversions"; in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

72

## COUNT XXVIII

In or about April 1986, in the Southern District of Florida, the defendant,

### DENNIS McGUIRE

and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance, which had been off-loaded from the M/V "Diversions"; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

73

## COUNT XXIX

In or about April 1986, in the Southern District of Florida, the defendant,

DENNIS McGUIRE

and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance, which had been off-loaded from the M/V "Diversions"; in violation of Title 21, United States Code, Sections 841(a)(1) and Title 18, United States Code, Section 2.

74

## COUNT XXX

In or about August, 1986, in the Southern District of Florida, the defendant,

### DENNIS McGUIRE

and others known and unknown to the grand jury did knowingly and intentionally import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance, which had been off-loaded from the M/V "Nautilus" a/k/a "Dixie Diver"; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

75

COUNT XXXI

In or about August, 1986, in the Southern District of Florida, the defendant,

DENNIS McGUIRE

and others known and unknown to the grand jury did knowingly and intentionally possess with intent to distribute a controlled substance, that is, in excess of 1000 pounds of marijuana, a Schedule I controlled substance, which had been off-loaded from the M/V "Nautilus" a/k/a "Dixie Diver"; in violation of Title 21, United States Code, Sections 841(a)(1) and Title 18, United States Code, Section 2.

76

## COUNT XXXII

In or about September 1986, in the Southern District of Florida, the defendant,

### DENNIS McGUIRE

and others known and unknown to the grand jury did knowingly and intentionally attempt to import into the United States, from a place outside thereof, a controlled substance, that is, a quantity of marijuana, a Schedule I controlled substance, which had been off-loaded from the M/V "Nautilus" a/k/a "Dixie Diver"; in violation of Title 21, United States Code, Sections 952(a), and 960(a)(1), and Title 18, United States Code, Section 2.

## COUNT XXXIII

1.   From on or about March 1, 1979 to on or about January 1, 1987, in the Southern District of Florida, and elsewhere, the defendants,

> LAWRENCE BERRIN,
> DENNIS McGUIRE,
> PAUL ACKLEY,
> IAN KREBS,
> SHAUN M. LITTLE, and
> SCOTT CASEY,

did knowingly, willfully and unlawfully combine, conspire, confederate and agree together, and with Michael I. Levine, Patrick Bilton, Edward Curran and Dennis Cason and with other persons known and unknown to the grand jury, to defraud an agency of the United States, that is, the Internal Revenue Service, by hindering, impeding, impairing and obstructing the lawful functions of the Internal Revenue Service of the Treasury Department of the United States in the ascertainment, computation, assessment and collection of the revenue, to wit, the personal income taxes of DENNIS McGUIRE, PAUL ACKLEY, IAN KREBS, SHAUN M. LITTLE, Patrick Bilton, Edward Curran, Michael O. Munday, Dennis Cason and others.

2.   It was a part of the conspiracy that the defendants, DENNIS McGUIRE, PAUL ACKLEY, IAN KREBS, SCOTT CASEY, and SHAUN M. LITTLE, and their coconspirators would import large quantities of marijuana into the United States

and distribute the marijuana for the purpose of engendering
large profits to themselves and their coconspirators.

3.    It was a further part of the conspiracy that the
defendant LAWRENCE BERRIN and coconspirator Michael I. Levine
would "launder" the proceeds of the marijuana smuggling
through "shelf" corporations and bank accounts established in
the Isle of Man, England, the British Virgin Islands, Panama
and elsewhere and would take all steps necessary to conceal
the marijuana smuggling activities and the profits derived
therefrom, through the use of attorney "trust accounts" and
the creation of false and misleading documents.

4.    In furtherance of said conspiracy and to effect the
objects thereof, in the Southern District of Florida and
elsewhere, one or more of the DEFENDANTS and their
coconspirators committed and caused to be committed at least

one of the overt acts described in Count One of this Indictment, which overt acts are incorporated herein by reference as if set out in full herein.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL

_Sergio E. Mendez_
FOREPERSON

LEON B. KELLNER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ROBERT J. LEHNER
ATTORNEY-IN-CHARGE
MIAMI OFFICE
U.S. DEPARTMENT OF JUSTICE

LOTHAR R. GENGE
SPECIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
FORT LAUDERDALE FIELD OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) UNITED STATES DISTRICT COURT |
| v. | ) SOUTHERN DISTRICT OF FLORIDA |
| | ) |
| LAWRENCE BERRIN, | ) CASE NO: 86-873-Cr-DAVIS(S)(S) |
| DENNIS McGUIRE, | ) |
| PAUL ACKLEY, | ) |
| IAN KREBS, | ) |
| SHAUN M. LITTLE, | ) ESTIMATED TRIAL TIME |
| RANDY LANIER, | ) |
| TERRY CASEY, | ) |
| SCOTT CASEY, | ) |
| TOMMY TEAGLE, and | ) |
| ROBERT STEPHENS, SR. | ) |

## CERTIFICATE OF TRIAL ATTORNEY

I do hereby certify:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the indictment/ information.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28, U.S.C., Section 3161.

3.   This cause will take __21 to 60__ days for the parties to try.

4.   (Check the appropriate category)

| | | |
|---|---|---|
| _____ | I | 0 to 5 days |
| _____ | II | 6 to 10 days |
| _____ | III | 11 to 20 days |
| XX | IV | 21 to 60 days |
| _____ | V | 61 days and over |

5.   Has this case been previously filed in this Court?

If yes, Judge __Davis__

Case Number: __86-873-Cr-DAVIS(S)__
A copy of the dispositive order must be attached hereto.

6.   Was this matter pending in the Office of the United States Attorney as of August 16, 1985? _____ Yes , __XX__ No.

LOTHAR R. GENGE, Spec. Atty.
Special Attorney
U.S. Department of Justice